

FILED & JUDGMENT ENTERED
Steven T. Salata

Oct  08  2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TONY MONROE BROWN, JR.** and | ) | **Case No. 11-32223** |
| **MANIJEH NESHAT BROWN,** | ) | **Chapter 7** |
| | ) | |
| Debtors. | ) | |
| | ) | |
| **JOHN RICHARD DEAN, MARK** | ) | |
| **SHAW, and NORMAN PARK,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 11-03223** |
| | ) | |
| **TONY MONROE BROWN, JR.** | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

**THIS MATTER** came before the Court for trial on September 19, 2013.

Christopher J. Culp appeared on behalf of the Plaintiffs, John Richard Dean, Mark Shaw,

and Norman Park, (the "Plaintiffs") and G. Martin Hunter appeared on behalf of the

Defendant and Debtor, Tony Brown, ("Brown").

1

## FACTS

Brown is a real estate broker licensed in North Carolina and is a real estate developer and investor in real estate. He is the managing partner of a partnership between himself, his wife, his father and his father's wife, and Keith Guercio and his wife. That partnership owns a real estate venture on Albemarle Road in Charlotte, NC.

Over the course of the last several years, the Plaintiffs and Brown entered into a number of transactions wherein Brown arranged for Plaintiffs to lend money to Brown's real estate clients to enable the clients to finance real property transactions in which Brown had an interest as a broker or otherwise. Over the same period of time, Brown also invited Plaintiffs to invest funds in his own real estate ventures, including the real estate venture owned by the partnership described above on Albemarle Road.

In April 2008, Brown sent Plaintiff Dean an e-mail telling him that "we" are involved in the development of a residential subdivision in Mecklenburg County and inviting him and others to participate by lending "about $500k for 12-18 months." The e-mail provided information about the nature of the project and the projected cost and profit. Brown offered to collateralize the loans by giving a mortgage on his office building in Mint Hill, NC. Brown represented that his office building had a total lien indebtedness of approximately $135,000. Brown also represented that the office building was worth between $775,000 and $800,000.

Unbeknownst to the Plaintiffs, the office building was actually encumbered by at least three (3) prior deeds of trust and the cumulative balance owed on the mortgages greatly exceeded $135,000. It also had a fair market value of far less than what Brown represented.

2

Dean shared Brown's e-mail with the other two plaintiffs. Based on the representations in the e-mail and on having done business successfully with Brown in the past, the Plaintiffs loaned Brown $150,000 each. Dean and Park received promissory notes and deeds of trust evidencing and securing the loan. (Brown promised an identical note to Shaw but never provided one to him.) The deeds of trust, however, did not contain the necessary signature of Brown's wife, who owned the office building with him as tenancy by the entirety.

After Brown received the $150,000 from each Plaintiff, he began making the interest payments called for in the notes and did so for about five months. When the interest payments slowed, Dean contacted Brown and Brown told him that the improvements that were made to the property with the funds cost much more than was originally anticipated. He offered that as an excuse for the cessation of the monthly payments.

Over the next year and a half, the Plaintiffs continued to demand that Brown resume making payments and that he repay the loans in full. Brown only made one additional payment of $5,000 to each of the Plaintiffs. Otherwise, the loans remained, and still remain, in default.

In May 2010, Plaintiffs traveled to Charlotte to meet with Brown personally to inspect the subdivision. At the Plaintiffs' insistence, on May 19, 2010, Brown showed Plaintiffs the Albemarle Road development. It was immediately obvious that little, if any, work had been done in terms of the improvements Brown stated had been made with the Plaintiffs' money. Brown even admitted that much, if not all, of the money the

3

Plaintiffs' loaned had been used for purposes other than the subdivision, such as payroll expenses for his business.

## PROCEDURAL HISTORY

Brown and his wife filed bankruptcy on August 26, 2011. The Plaintiffs filed this adversary proceeding against Brown and his wife on November 23, 2011 and asserted the following cause of action: 1) Claim on loan, 2) Conversion, 3) Fraud, 4) Unfair and Deceptive Trade Practices, and 5) Objection to Dischargability.

Brown's wife was dismissed from the adversary proceeding on March 12, 2013.

Brown does not dispute the existence of a claim on loan and at the conclusion of the trial, the Plaintiffs dismissed their conversion claim. Thus, the issues left to be decided were the Plaintiffs' 1) fraud claim, 2) objection to dischargability, and 3) unfair and deceptive practices claim.

## DISCUSSION

**I.      The Plaintiffs Claim for Fraud is GRANTED.**

To prove a claim for fraud, a plaintiff must show the following essential elements: a "(1) [f]alse representation or concealment of a past or existing material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Whisnant v. Carolina Farm Credit,* 204 N.C. App. 84, 94 (2010).

For a statement to be actionable, the defendant must have "known the representation was false when making it, or … must have made the representation recklessly without any knowledge of its truth and as a positive assertion." *Ausley v.*

*Bishop,* 133 N.C. App. 210, 217 (1999).  The representation must also be material, in that

it would have influenced the recipient's decision to act.  *See Latta v. Rainey,* 202 N.C.

App. 587, 599 (2010).  While a misrepresentation generally must be specific, the level of

required specificity "depends upon the tendency of the statements to deceive under the

circumstances." *Ragsdale v. Kennedy,* 286 N.C. 130, 139 (1974). Finally, the intent

requirement can be shown by circumstantial evidence or by showing a motive of the

individual making the statements. *See Latta,* 202 N.C. App. at 600.

Here, Brown's actions constitute actual fraud as he made several material

misrepresentations to the Plaintiffs in the April 2008 e-mail.  First, he represented that

"we" have gotten approval for a thirteen-lot subdivision when final approval had not yet

been obtained.  Keith Guercio, one of the co-owners of the property, testified at trial that

while the owners had discussed this as a possibility, no approvals had been obtained from

the county.

Second, he misrepresented that his office building offered as security for the loan

had only $135,000 worth of debt.  In reality, it was encumbered by at least three prior

deeds of trust and the cumulative balance owed on the property was much greater than

$135,000.  Brown, as owner of the property and as a real estate broker, knew, or should

have known, the outstanding indebtedness on the property.  If he truly did not know, he

should have known, and the statement was made recklessly.

Third, Brown misrepresented that the fair market value of his office building was

worth between $775,000 and $800,000 when it reality, he knew or should have known

that it was worth far less than that.

Fourth, while the promissory notes did not contain a provision limiting the use of

the funds to the development of the property, Brown implied in his e-mail that he would use the funds for that purpose.  The fact that Brown never received approval for the subdivision and never made *any* improvements to the property indicates that he never had any intention of using the money for making improvements to the property.

Brown's misrepresentations were reasonably calculated to deceive, were made with the intent to deceive, and did in fact deceive the Plaintiffs.  Due to Brown's and the Plaintiffs' prior successful business relationships, Brown knew that the Plaintiffs would trust and rely on his statements.  The April 2008 e-mail contained an attractive projected cost/profit analysis and included an offer to collateralize the loans with a mortgage on Brown's office building.  Brown knew that the Plaintiffs would have relied on him, as owner of the office building he offered as collateral, to know and correctly represent the outstanding indebtedness and value.  The Plaintiffs testified at trial that but for the statements in the e-mail, they would not have made the loan.  They would never have loaned Brown the money if they had known the true facts: that he never intended to use the funds to develop the property and that they would not be sufficiently protected by collateral.  Brown intended to deceive the Plaintiffs into making a loan and successfully did so.

As a result of Brown's fraud, the Plaintiffs suffered damages in the amount of $150,000 each, plus unpaid interest of $72,450, for a total of $222,450.

As such, the Plaintiffs are entitled to a judgment against Brown on their claim of fraud.

II.   **The Plaintiffs' Objection to Dischargability is GRANTED under 11 U.S.C. §523(a)(2)(A)[1] because the Plaintiffs' Claims Arose from Brown's Fraudulent Conduct.**

As discussed above, the Plaintiffs demonstrated at trial that they are entitled to a judgment against Brown on their fraud claim. This claim, and the right to damages, should not be discharged by Brown's bankruptcy.

11 U.S.C. §523(a)(2)(A) of the Code states in part, a "discharge ... of this title does not discharge an individual debtor from any debt – (2) for money, property, services ... to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A). The Fourth Circuit has observed that the purpose of this exception is "to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." *Nunnery v. Rountree* (*In re Rountree*), 478 F.3d 215, 219-20 (4th Cir. 2007).

In order to have a debtor's liability deemed nondischargeable under §523(a)(2)(A), a Plaintiff must establish that a debt was incurred through: "1) a fraudulent misrepresentation; 2) which induced the Plaintiff to act or refrain from acting, 3) which caused harm to the Plaintiff; and 4) upon which the Plaintiff justifiably relied." *Foley & Lardner v. Biondo* (*In re Biondo*), 180 F.3d 126, 134 (4th Cir. 1999). As the party challenging the dischargeability of debt, a Plaintiff has the burden of establishing each of the foregoing elements by a preponderance of evidence. *See Grogan v. Garner*,

---

[1] While the Plaintiffs' complaint did not specify the section of the Bankruptcy Code under which they were objecting to dischargability, the parties litigated as if the objection had been made under 11 U.S.C. §523(a)(2)(A) or (a)(2)(B). Based on the evidence and factual averments, the Court thinks that the circumstances most closely align with an objection under 11 U.S.C. §523(a)(2)(A) as no statement of the Debtor's financial condition was used.

498 U.S. 279, 291 (1991).

### A.  Brown Made a Fraudulent Misrepresentation.

A representation is fraudulent if it was "known to be false or recklessly made without knowing whether it was true or false." *In re White*, 128 Fed. Appx. 994, 998 (4th Cir. 2005) (*citing In re Woolley*, 145 B.R. 830, 834 (Bankr. E.D. Va. 1991)).

As discussed above, Brown made several fraudulent misrepresentations.  In his e-mail communication in April 2008, he misrepresented that "we" have gotten approval for a thirteen-lot subdivision when final approval had not yet been obtained, that his office building offered as security for the loan had only $135,000 worth of debt, that the fair market value of his office building was worth between $775,000 and $800,000, and that the funds would be used for the development of the property.

### B.  The Misrepresentations Induced Plaintiffs to Act.

The second element required for a nondischargeable debt under §523(a)(2)(A) is that the Defendant's representations induced the Plaintiff to either act or refrain from acting.

This element is satisfied.  As discussed above, Brown's statements in the April 2008 e-mail were clearly intended to induce the Plaintiffs to invest with him. Due to Brown's and the Plaintiffs' previous successful business relationships, Brown knew that the Plaintiffs would trust and rely on his statements.  The Plaintiffs testified at trial that but for the statements in the e-mail, they would not have made the loan.

**C.  The Fraudulent Misrepresentations Caused Harm to Plaintiffs.**

The third element of causation is satisfied because the Plaintiffs have not been repaid the money they loaned Brown as a result of his fraudulent misrepresentations.

**D.  The Plaintiffs Justifiably Relied on Brown's Statements.**

The final element is whether the Plaintiffs justifiably relied upon Brown's misrepresentations.  To satisfy the justifiable reliance requirement, the Plaintiffs must prove they actually relied upon Brown's misrepresentations.  *See In re Sharp*, 340 Fed. Appx. 899, 907 (4th Cir. 2009) (*citing Field v. Mans*, 516 U.S. 59, 68 (1995)).  Justifiable reliance is a minimal, subjective standard that encompasses "a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *See Field*, 516 U.S. at 71 (*citing* Restatement of Torts (Second) § 545A, cmt. b (1976)).

Although the justifiable reliance element does not typically give rise to a duty to investigate, a creditor is not entitled to "blindly rel[y] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *In re Sharp,* 340 Fed. Appx. at 907 (*quoting* Restatement (Second) of Torts §541, cmt. a (1976)). "A duty to investigate can arise when the surrounding circumstances give red flags that merit further investigation; this analysis turns on 'an individual standard of the [creditor's] own capacity and the knowledge which he has.'" *In re Sharp*, 40 Fed. Appx. at 906-07 (*citing Field*, 516 U.S. at 72).

Here, the Plaintiffs were justified in relying on Brown's representations.  They had had relationships with Brown in the past and, between the three of them, had entered into at least fifty successful business transactions with him.  Throughout that time, the

Plaintiffs had developed a relationship of trust and confidence with Brown.  As a result,

they trusted his representations that he had substantial equity in the property he proposed

to use as collateral and that he had obtained approval for the subdivision.

At trial, Brown highlighted that the Plaintiffs did not conduct a title search of the

office building property or obtain a separate attorney in connection with the closing of the

loan and signing of the deeds of trust.  However, there were no "red flags" that would

have signaled the need for the Plaintiffs to do either of those things.  In their prior

relationships with Brown, Plaintiffs had always relied on Brown's attorney to handle the

closing and documents.  The Plaintiffs live in California and Brown and the properties

were in North Carolina.  It is not reasonable to expect that the Plaintiffs would have

conducted their own title search or hired their own attorney.  There was no reason for the

Plaintiffs not to trust Brown or his attorney this time.

Therefore, for the reasons outlined above, the Court finds that Brown's debt to

each of the Plaintiffs is non-dischargeable under §523(a)(2)(A).

### III.    The Plaintiffs Claim for Unfair and Deceptive Trade Practices is GRANTED and Plaintiffs' Damages are Trebled.

The North Carolina Unfair and Deceptive Trade Practices Act provides that

"unfair or deceptive acts or practices in or affecting commerce are declared unlawful."

N.C. Gen. Stat. §75–1.1 (2103). The Act also provides that provides that "if damages are

assessed in such case, judgment shall be rendered in favor of the plaintiff and against the

defendant for treble the amount fixed by the verdict." N.C. Gen. Stat. §75–16 (2013).

To set out a claim for unfair and deceptive trade practices, a plaintiff must allege

that the "(1) defendant has committed unfair or deceptive acts or practices; (2)

defendant's conduct was in commerce or affected commerce; and (3) defendant's

conduct caused injury to plaintiff." *Norman v. Nash Johnson & Sons' Farms, Inc.,* 140 N.C. App. 390, 417 (2000).

Generally, "an unfair act or practice is one in which a party engages in conduct which amounts to an inequitable assertion of its power or position." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 607 (2008). The statute does not specify what constitutes an unfair or deceptive act, but North Carolina courts have held that a plaintiff who proves fraud may thereby establish that an unfair or deceptive trade practice occurred. *See, e.g., Davis v. Sellers*, 115 N.C. App. 1, 9 (1995).

The Unfair and Deceptive Trade Practices Act was intended to regulate a business's regular interactions with other market participants. *See generally HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594 (1991). The Act defines "commerce" as "business activities." *Id.* (*quoting* N.C. Gen. Stat. §75–1.1(b)).

Applying these principles to the current situation, it is clear that Brown's behavior rises to the level of fraud and thus qualifies as a deceptive act under N.C. Gen. Stat. §75-11. It is also clear that his actions were made in or affecting commerce. It is clear that Brown's conduct has caused injury to the Plaintiffs. Due to Brown's fraudulent conduct, the Plaintiffs have suffered damages of $150,000 each, plus unpaid interest of $72,450, for a total of $222,450.

## CONCLUSION

In the face of the foregoing, this Court **GRANTS** Plaintiffs' claim for fraud, **GRANTS** Plaintiffs' objection to the dischargeability of Brown's obligation under 11 U.S.C. §523(a)(2)(A), and **GRANTS** Plaintiffs' claim under the North Carolina Unfair and Deceptive Trade Practices Act. In accordance with N.C. Gen. Stat. §75–16,

11

Plaintiffs' damages against Brown are trebled.  Judgment will be entered in favor of the

Plaintiffs in the amount of $667,350 each.

**SO ORDERED.**

This Order has been signed                                      United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.